Simon, J.
delivered the opinion of the court.
Plaintiff sues to recover a sum of $4000, which she alleges to be the amount of a note subscribed by Joseph H. Gladding, on the 25th of July, 1839. The defendant, who is the curator of the succession of the alleged maker of the. note, pleads, that the instrument sued upon was not the voluntary act of the deceased, but was made when from his extreme and last sickness he was incapable of making any act not even a last will; that no consideration was given for. the said note, and that the plaintiff lived in a state of concubinage with the deceased, and was incapable of recovering by donation, remunerative or otherwise, more than one tenth part of his estate, which she had already and actually received in money and movables.
The evidence shows, among other facts which it would be too long to detail, that the plaintiff and the deceased lived in a state of notorious concu *92 binage; that the note sued -on was signed after four o’clock, p. m. ; that Glad-ding died at about nine o’clock of the same evening; and that he was not in [147] a situation to make a contract, having been in the morning and afternoon apparently out of his senses; that the note was made to an amount equal to the value of a lot of ground and the buildings thereon erected, which the deceased intended to bequeathe to the plaintiff; and that after the note had been read to Gladding, he said it was right, rose, and although he used to write a good hand, made his cross to it, because he was too weak in body at the time to write. The evidence shows further that in the morning of the day of Gladding’s death, a notary,. Mr. Christy, had been sent for to make said Gladding’s will; that the notary came, had a conversation with Gladding, and told him it was better to postpone the making of his will, as he would get better; that in the afternoon, the witnesses to the note proposed that a note should be given; and this was concluded upon because they could not have a will made. A great deal of testimony has also been adduced by the plaintiff to prove the value of her services as Gladding’s servant; and she has attempted to show that the deceased’s main object in signing the note of $4,000 was to remunerate her for her said services. The record shows also the. estate of the deceased to be worth $22,600, $1633 of which consist in movables, and the balance in immovable property; and that the plaintiff had received before Gladding’s death, by certain sales alleged to be simulated, a slave and some furniture, and also a check for $700 which was recovered on the day of his death.
Notwithstanding the strenuous efforts made by plaintiff’s counsel, to convince us that his client ought to be entitlod to recover, that Gladding had the necessary capacity to bind himself in a valid contract; that the note sued on was given for a valuable consideration, to wit, to remunerate the plaintiff for the value of services which she had rendered to the deceased as his' servant, during the space of twelve years; that as a concubine, she would even be capable of receiving a donation of movables, to the amount of one tenth part [148] of the estate; and that in supposing the note to be a disguised donation under the form of an onerous contract, such donations are valid, but only reducible if they exceed the disposable portion; we feel bound, under the evidence and circumstances of the case, to consider the note sued on, in no other light but as having for its object a disposition mortis causa, and as such, not being clothed with the necessary and requisite formalities of the law, it cannot, in our opinion, have any legal effect.
Under the article 1453 of the Louisiana Oode, property can neither be acquired nor disposed of gratuitously, unless by donations inter vivos or moetis oatjsa, made in the forms hereafter established for one or the other of these acts ; ” and according to article 1455, a donation, mortis causa, is defined to be “ an act to talce effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, &e. &c." The article 1563 says that: “ Ufo disposition mortis oatjsa shall henceforth be made otherwise than by last will or testament; all other form is abrogatedNow, it has been clearly proven that the deceased intended to make his will for the undenied and even avowed purpose of bequeathing to the plaintiff certain immo *93 vable property of the value of $4000, and that owing to certain circumstances, principally attributable to the laudable and delicate refusal of the notary, whose motives it is not necessary to inquire into, the will could not be executed ; and that in order to obviate this difficulty, it was suggested to make a note exactly corresponding to the value or amount of the intended legacy; and accordingly, about four hours before Gladding’s death, and when there could not be any further hope of his recovery, he was prevailed upon to sign a note of $4000, payable thirty days after date, or rather thirty days after his death; the payment of which was to stand in lieu of the said intended legacy. From these facts, can it be doubted that Gladding’s intention, in signing the note sued on, was to make a disposition mortis cama f he and those [149] who assisted him were aware that he could not live, and the note became the expression of what he wished to be done after his death, or in other words, Ms testament; testamentum est voluntatis nostree justa sententia de es quod quis post mortem suam fieri relit. Considering it as such, we must conclude that the amount of this note, shown to be virtually nothing but a mere disposition mortis causa, cannot be recovered; and that the judge a quo did not err in giving judgment in favor of the defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed, with costs.